**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

SYBIL GREEN                                    CIVIL ACTION NO. 07-0929

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

WAL-MART STORES, INC.                          MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 35) filed by Defendant Wal-Mart Louisiana, L.L.C. ("Wal-Mart"), seeking summary judgment on each and every claim in Plaintiff Sybil Green's ("Green") complaint. Green has alleged claims of race, age, and gender discrimination. Green opposed the Motion for Summary Judgment. See Record Document 35. While Green's opposition was untimely, the Court considered the filing in reaching its ruling, as "district courts have broad discretion to consider untimely oppositions to motions for summary judgment." Nelson v. Star Enterprise, No. 99-30976, 2000 WL 960513, *1 (5th Cir. June 15, 2000), citing Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 367 (5th Cir.1995); Lowndes v. Global Marine Drilling Co., 909 F.2d 818 (5th Cir.1990). For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Green's claims are **DISMISSED WITH PREJUDICE**.

## I. FACTUAL BACKGROUND.[1]

Green, a black female, was born February 25, 1947. See Record Document 35, Exhibit A (Deposition of Green). In December 2000, she was hired as a full-time People Greeter at Wal-Mart Store No. 450 in Shreveport, Louisiana ("the Shreveport store"). See id.; Record Document 1, ¶ 12. At that time, she was 53 years old. Green received favorable annual evaluations throughout her employment at Wal-Mart. See Record Document 35, Exhibit A.

Wal-Mart is an equal opportunity employer and maintains policies prohibiting discrimination on any illegal basis, including age, race, and gender. See id., Exhibit H (Wal-Mart Associate Guide). Specifically, its Discrimination and Harassment Prevention Policy outlines prohibited conduct as well as reporting procedures. See id., Exhibit I

---

[1] Wal-Mart filed a detailed Statement of Undisputed Material Facts. See Record Document 35-2. Green responded with a Statement of Contested/Uncontested Facts. See Record Document 40-2. While most of Wal-Mart's facts went "uncontested by Plaintiff," a few of the listed facts were "contested by Plaintiff as written." Id. Of the "contest by Plaintiff as written" facts, some were followed by a explanatory sentence and/or a reference to an exhibit. See id.

The Local Rules of this district provide:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

L.R. 56.2. Green's bare response of "contested by Plaintiff as written," without even the minimal explanatory sentence or reference to an exhibit, failed to identify any specific evidence in the record to dispute Wal-Mart's statement of fact. It is not this Court's duty to perform that task for Green. See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Accordingly, all facts "contested by Plaintiff as written," and for which Green provided no further explanation or reference to the summary judgment record, are hereby deemed admitted.

(Discrimination & Harassment Prevention Policy (PD-19) - National). Wal-Mart also has an Attendance/Punctuality Policy, which advises its associates that regular and punctual attendance is a required and essential function of their job. See id., Exhibit F (Attendance/Punctuality (Except Div. 05 and Div. 07)). The policy expressly provides that associates that fail to show up or call in to advise that they will be absent for three consecutive scheduled workdays will be deemed to have abandoned their job and will be considered to be voluntarily terminated. See id.

Green received orientation and training concerning these Wal-Mart policies. See id., Exhibit A. She was aware of the no call, no show policy and knew that she needed to notify her supervisor or management if she was not going to be able to work on a scheduled workday. See id.

Green did not have any significant problems at work until Bruce Willis ("Willis"), a white male, became the store manager in 2004. See id. After his hiring, Green contends that she was the target of unfair treatment, namely having her hours cut and receiving less favorable scheduling. See id. She further maintains that Willis and Virginia Crane ("Crane"), a white female co-manager, discriminated against her based upon her race, age, and gender in relation to her scheduling and hours in 2004 and 2005. See id. Green also alleges that after she complained about Willis, he began to retaliate against her by singling her out for unfair treatment. See id. During this same time period in 2004 and 2005, Green's evaluations, which were approved by Willis, were labeled as "exceeds expectations" and "one-hundred percent." See id.

Green claims that she was the sole People Greeter targeted for reduced hours, unfair scheduling, harassment, and unfair treatment at work. See id. Other People

Greeters on staff at the Shreveport store were both older and younger than Green, black and white, and male and female. See id. The most desirable and requested work schedule for People Greeters was the 7:00 a.m. to 4:00 p.m. shift. See id. Green was awarded this shift on or about January 2006. See id. After receiving this shift, the alleged harassment ended and Green did not have any significant problems at work until a new type of alleged harassment began in mid-September 2006. See id.

On September 15, 2006, a younger black female assistant manager accused Green of calling Willis a racist. See id. Green maintains this incident resulted in her being harassed and discriminated against by numerous members of management and hourly associates. See id.[2] These individuals were of all ages, races, and genders. See id. She contends that these individuals watched her, followed her around, and generally made her feel like a criminal. See id. This alleged harassment and discrimination began on September 15, 2006 and lasted through the beginning of October 2006. See id. As in 2004 and 2005, Green alleges that she was the only People Greeter singled out for the unfair and/or harassing treatment while the other People Greeters of all ages, races, and genders were treated more favorably. See id.

On October 6, 2006, Green's doctor advised her, during a regularly scheduled visit, to remain off of work for a brief period until she took some prescription medication and returned to see him. See id. Green requested a note from her doctor, which she

---

[2]Green maintains that the following individuals discriminated against between September 15, 2006 and the beginning of October 2006 due to her race, sex, age, some combination of those factors, or all of those factors: Willis; Crane; Christy Ratliffe, Market Manager; Glenda Willis, Assistant Manager; Barbara Green, Assistant Manager; Barbara Carter, Customer Service Manager; "Sharon," Home Office; "Stanley," Co-Manager; "Alicia," Assistant Manager; "Jean," Customer Service Manager and "Asundra," Cashier.

immediately faxed to the Shreveport store to inform a member of management that she would be out from October 6 through October 15. See id.; Exhibit J (October 6, 2006 Note from Dr. John Danzell). On October 16, 2006, Green faxed another doctor's note to the Shreveport store indicating that she needed additional time off from October 16 to October 30, 2006. See Record Document 35, Exhibits A and K (October 12, 2006 Note from Dr. John Danzell). The second note indicated that Green would be able to return to work on October 31, 2006. See id.

Green visited her doctor on October 31, 2006, the day she was scheduled to return to work. See Record Document 35, Exhibit A. She understood that she had to advise store management that she would not be returning to work as scheduled on October 31, 2006 or her job would be in jeopardy. See id. She did not fax another doctor's note to the Shreveport store advising that she would not be able to return to work as scheduled on October 31, 2006. See id. Green maintains that she believed her doctor would advise the store of her continued absence. See id. Store personnel called Green by telephone between October 16 and October 30 to advise her that she needed to complete leave of absence paperwork. See id. Green informed the assistant manager that contacted her that she did not have to complete the paperwork and ended the conversation. See id. Green maintains that this response was based on her belief that her doctor had faxed another note to the Shreveport store. See Record Document 40-2, ¶ 47. Green claims that she never received the leave request paperwork, never advised Wal-Mart that she did not receive the paperwork, and did not know that she could be automatically rehired after returning with her paperwork. See Record Document 35, Exhibit A; Record Document 40-2, ¶ 46.

Green was scheduled to return to work on October 31, 2006 and scheduled to work on November 1 and 3. See Record Document 35, Exhibit A. Store management did not receive any word from Green during the period from October 31 through November 3, 2006. See id., Exhibit B. Pursuant to Wal-Mart's attendance policy, Green was terminated on November 3, 2006 for no call, no show for three consecutive scheduled work days, October 31, November 1, and November 3, 2006. See id., Exhibits A, B, & G (Exit Interview Form). The decision to terminate Green was made by Debbie Schmidtke, Market Human Resources Manager. See id., Exhibit B. Green was designated as eligible for rehire on her exit interview form, but failed to reapply. See id., Exhibits A & G. After learning of her termination, Green made no personal effort to contact the Shreveport store. See id., Exhibit A. Neither Green nor Willis are aware of any associate at the Shreveport store who violated the no call, no show policy for three consecutive days of work and was not terminated. See id., Exhibits A & B.

Green was replaced by Annie Ford ("Ford"), a black female, age 58. See Record Document 35, Exhibit B. Ford now works the shift worked by Green prior to her termination. See id. Other People Greeters of various ages, races, and genders sometimes perform the duties formerly performed by Green as well. See id.

## II.     PROCEDURAL BACKGROUND.

Green filed a charge of race, age, and gender discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 13, 2006. See id., Exhibit C (EEOC Charge). The charge related to alleged discrimination that occurred from mid-September 2006 to November 3, 2006. See id., Exhibits A & C. The charge did not reference any alleged discrimination in 2004 or 2005. See id. Specifically, the charge

alleged:

> A. [Green] was treated differently than the other Door Greeters who were both Black & White, Male & Female and over & under age 40.
>
> B. I was discharged while out on disability leave.

Id., Exhibit C. The EEOC issued a Dismissal and Notice of Rights to Green on February 28, 2007. See id., Ex. D (Dismissal and Notice of Rights).

On May 30, 2007, Green filed a complaint before this Court alleging that Wal-Mart discriminated against her based upon her age, gender, and race, all in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). See Record Document 1. Green also alleged that Wal-Mart was liable under Louisiana law for age, gender, and race discrimination.[3] See id. Wal-Mart filed the instant Motion for Summary Judgment on August 22, 2008, seeking dismissal of all of Green's claims of age, gender, and race discrimination. See Record Document 35. Green filed her opposition on September 16, 2008. See Record Document 40.

### III.  LAW AND ANALYSIS.

#### A.  Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the

---

[3]On October 29, 2007, the Court entered an order dismissing all of Green's Louisiana tort claims. See Record Document 19. The remaining state law claims are Louisiana statutory claims based on age, race, or sex discrimination. See id.

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

**B.	Discrimination Claims.**

**1.	Title VII, ADEA, and Louisiana Statutory Claims.**

Green has asserted claims of age, race, and gender discrimination under both federal law and Louisiana anti-discrimination statutes. Because Louisiana courts have observed the commonality between federal and state anti-discrimination laws, and have approved the application of Title VII's McDonnell Douglas doctrine to state discrimination claims, this Court will consider Green's federal and state age, race, and gender discrimination claims under the same rubric. See Brauninger v. Motes, No. 07-30228, 2007 WL 4467583, **4 n. 4 (5th Cir. Dec. 20, 2007); La Day v. Catalyst Technology, Inc., 302 F.3d 474, 477 (5th Cir. 2002); Spears v. Rountree Oldsmobile-Cadillac Co., 26,810 (La.App. 2 Cir. 4/5/95), 653 So.2d 182, 184.

Under the McDonnell Douglas[4] standard, to establish a *prima facie* case of discrimination in violation of Title VII or the ADEA, Green must show that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either I) replaced by someone outside the protected class; or ii) otherwise discharged because of her age, race, or gender. See Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007), citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir.2004). Once Green has met this burden, Wal-Mart must articulate a legitimate, non-discriminatory reason for its decision to terminate her. Berquist, 500 F.3d at 356. If Wal-Mart meets this burden of production, then Green "must then offer sufficient evidence to create a genuine issue of material fact either (1) that [Wal-Mart's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Wal-Mart's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Green's] protected characteristic (mixed-motive[s] alternative)." Id. at 356, citing Rachid, 376 F.3d at 312.

There is no dispute that Green easily meets the first three requirements of a *prima facie* case. Her discrimination claim hinges on the fourth requirement, whether she was replaced by someone outside the protected class or otherwise discharged because of her age, race, or gender. Green has admitted that she was replaced by Ford, a black female who was 58 years old at the time in question. See Record Document 35, Exhibit B. Ford is of the same race and gender as Green and is also over the age of 40. Thus, Green is left with the sole option of demonstrating that she was otherwise discharged because of

---

[4]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).

her age, race, or gender.[5]  In a case such as this, Green can satisfy this fourth element by establishing that she did not violate the no call, no show policy or that, if she did, other employees outside of the protected class who engaged in similar acts were not punished similarly.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995), citing Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980).

The summary judgment record easily supports a finding that Green violated Wal-Mart's attendance policy.  The policy expressly provides that associates that fail to show up or call in to advise that they will be absent for three consecutive scheduled workdays will be deemed to have abandoned their job and will be considered to be voluntarily terminated.  See Record Document 35, Exhibit F.  Green provided the Shreveport store with doctor's notes for her absences prior to October 31, 2006.  See Record Document 35, Exhibits J & K.  Green visited her doctor on October 31, 2006, the day she was scheduled to return to work.  See id., Exhibit A.  After this visit, she did not fax a doctor's note to the Shreveport store advising that she would not be able to return to work as scheduled on October 31, 2006.  See id.  Instead, she relied on her doctor to perform this task.  See id.

Green was scheduled to return to work on October 31, 2006 and scheduled to work on November 1 and 3.  See id., Exhibit A.  Store management did not receive any word from her during this time period.  See id., Exhibit B.  Pursuant to Wal-Mart's attendance policy, Green was terminated on November 3, 2006.  See id., Exhibits A, B, & G.  Even

---

[5]In opposing the Motion for Summary Judgment, Green summarily argued that her "medical condition not allowing [her] to return to work as quickly as other employee's factored into the decision to terminate [her]."  Record Document 40 at 4.  This argument is irrelevant to the instant matter, as her complaint does not assert a Family and Medical Leave Act or an American with Disabilities Act claim.

after learning of her termination, Green made no personal effort to contact the Shreveport store. See id., Exhibit A. Further, Green has admitted that she is not aware of any associate at the Shreveport store who violated the no call, no show policy for three consecutive days of work and was not terminated. See id., Exhibits A. Willis, the store manager, attested to the same in his declaration. See id., Exhibit B. Accordingly, the Court finds that Green can not satisfy this fourth element of her prima facie case, as she has failed to establish that she did not violate the "no call, no show" policy for three consecutive days and/or that other employees outside of the protected class who engaged in similar acts were not punished similarly. Wal-Mart's Motion for Summary Judgment is therefore granted.[6]

### 2. Claims Relating to Alleged Discrimination in 2004 and 2005.

As a precondition to seeking judicial relief, both Title VII and the ADEA require that complaining employees exhaust their administrative remedies by filing a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b); 29 U.S.C. § 626(d). To determine if the claims asserted in a lawsuit are within the scope of the administrative charge, courts engage in a fact intensive analysis of the charge to determine what "can reasonably be expected to grow out of the charge of discrimination." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006) (citations omitted).

Here, even if this Court assumes that Green could satisfy her burden of proof in

---

[6]The summary judgment record establishes that Wal-Mart has satisfied its burden of articulating a legitimate, non-discriminatory reason, i.e., violation of the written no call, no show policy, for its decision to terminate Green. See Record Document 35, Exhibit F. However, because this Court has ruled that Green cannot establish her *prima facie* case of discrimination, it need not reach the issue of pretext or mixed motives.

relation to any alleged discrimination that occurred in 2004 and 2005, such claims would fail because the scope of her EEOC charge extends only to actions that took place in 2006. Green's EEOC charge relates only to alleged discriminatory acts that occurred in September through November 2006. See Record Document 35, Exhibit C. Green specifically limited her charge to "two disciplinary actions" that occurred in September 2006 and her termination in November 2006. See id. Thus, any alleged discrimination that occurred in 2004 and 2005 could not reasonably be expected to grow out of Green's charge and she is barred from asserting those claims in the instant lawsuit.

### 3. Punitive Damages.

Green seeks "punitive damages in an amount to conform to the latest dictates of the United States Supreme Court." Record Document 1 at 7. Wal-Mart has moved for summary judgment on the issue of punitive damages.

The ADEA does not provide for punitive damages. See Smith v. Berry Co., 165 F.3d 390, 395 (5th Cir. 1999); Dean v. American Security Ins. Co., 559 F.2d 1036, 1039 (5th Cir.1977). Under Louisiana law, punitive damages are available only when authorized by statute and Louisiana's anti-discrimination statutes do not authorize the recovery of punitive damages. See Ross v. Conoco, Inc., 828 So.2d 546, 555 (La. 2002); La. R.S. §§ 23:313, 325, 333, 353.

Title VII provides that "[a] complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a(b)(1). Here, even if the Court accepts all of Green's allegations as true, the

record simply does not support a finding that Wal-Mart engaged in intentional discrimination *and* did so with malice or with reckless indifference to federally protected rights.

IV. **CONCLUSION.**

Based on the foregoing, the Court finds that Green has failed to establish a *prima facie* case of discrimination. Accordingly, Wal-Mart's Motion for Summary Judgment is **GRANTED** and all of Green's discrimination claims are **DISMISSED WITH PREJUDICE**.[7]

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of November, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[7]After filing its Motion for Summary Judgment, Wal-Mart filed a Motion to Dismiss, or in the Alternative, Motion for Sanctions. See Record Document 37. Wal-Mart moved the Court to dismiss Green's lawsuit, with prejudice, based upon her failure to comply with a discovery order. See id. Alternatively, Wal-Mart sought sanctions against Green, including payment of its attorney's fees and costs for the filing of the Motion to Dismiss and the original Motion to Compel, as well as any other sanction deemed appropriate by the Court. See id. While Green opposed the Motion to Dismiss, or in the Alternative, Motion for Sanctions, she admitted that she had not provided Wal-Mart with the discovery at issue, i.e., a signed release for her social security disability records. See Record Document 39. She further maintained that dismissal was a harsh sanction and that the Court should consider lesser sanctions before the ultimate sanction of dismissal. See id.

The Court in no way condones Green's blatant disregard of the order directing her to sign a Consent for Release of Information from the Social Security Administration. See Record Document 33. However, in light of the instant ruling dismissing all of Green's claims of discrimination based on the merits, the Motion to Dismiss, or in the Alternative, Motion for Sanctions (Record Document 37) is hereby **DENIED AS MOOT**.